State ex rel. Wisconsin University Building Corporation and another, Respondents, vs. Bareis, City Clerk, Appellant.

*September 6—October 3, 1950.*

498

*Harold E. Hanson,* city attorney, for the appellant.

For the respondents there was a brief by the *Attorney General* and *Warren H. Resh,* assistant attorney general, and oral argument by *Mr. Resh.*

FAIRCHILD, J.   The problem presented to the board of review at its hearing on the confirmation of the assessment was as to the ownership of the particular property sought to be taxed.  It has been ruled too often to permit doubting now that exemptions from taxation are acceptable when the property has been acquired and used by and for the benefit of the state.  Taking property out from among the assessables and using it in a qualified and warranted service has the support of the doctrine that property owned by a state is

exempt from taxation. There is authority for that policy long recognized in this state: "When public property is involved, exemption is the rule and taxation the exception." 51 Am. Jur., Taxation, p. 550, sec. 557; 2 Cooley, Taxation (4th ed.), p. 1414, sec. 673.

The contention on the part of appellant that the properties are neither owned by the state nor held in trust for the state presents the controlling question. The corporation is a nonstock, nonprofit corporation organized under ch. 180, Stats., by the regents of the university. Its members and officers are required to be the persons who hold certain offices in the administrative structure of the university. Its function is to acquire and manage property for the sole use and benefit of the university, and all net revenues derived from such property which it holds are paid to the regents. This is an effort to meet the demands of a growing educational institution so as to produce all possible opportunity to those seeking the advantages of the university. The corporation has acquired numerous parcels of real estate in the city of Madison by direction of the regents looking toward the future expansion of the campus. Most of the properties remain in their original state but are now used for university purposes; a few are occupied by tenants who have no connection with the university. The city has assessed general property taxes against all the parcels. The corporation seeks to have the property declared exempt from taxation by reason of sec. 70.11 (1), which exempts "property owned by this state." The city says that the land is not owned by the state and relies on language in *Aberg v. Moe,* 198 Wis. 349, 224 N. W. 132, 226 N. W. 301, in which it was said that no right existed which permitted going behind the deed which conveyed the property to the regents in order to ascertain where the beneficial interest might lie. The city now says that it may stop with the deed to Wisconsin University Building Corporation, from which it appears that the land is not

owned by the state and therefore does not fall within the exemption.

In the *Aberg Case* it seems to have been assumed that everyone knew that the regents and the state are the same within the relation of agency, and that a deed to the regents was a deed to the state. Probably everyone did know that. But if it had not been so generally known the fact would have existed just the same. It is inconceivable that the city treasurer would have been permitted to say that he went no further than the deed; that he saw there that conveyance was not to the state of Wisconsin; and that the property, accordingly, was taxable. Either by common knowledge or by proof, it is competent to establish what the regents are and what their function is. If we do not know, we must pursue the search, and such search will end in the conclusion that the regents are an agency of the state and that, while they may acquire property, the same is really held by them as an agency of the state in furtherance of the state's purpose to maintain a university. In like manner the city may or may not know the character of the Wisconsin University Building Corporation, and inquiry is competent to find out what that corporation is. Such inquiry shows it to be an agency of the regents, who, themselves, have no existence or function except as an agency of the state. Everything which the corporation does do or can do is in reality done by and in the interest of the university, and therefore in the interest of the state, including the acquisition and holding of real property. The land so held is, to the extent that it has been paid for and conveyed to the corporation, actually state land. It is just as immaterial that the named grantee is Wisconsin University Building Corporation and not the state of Wisconsin as it was when the grantees were regents of the university and not the state of Wisconsin, as in *Aberg v. Moe, supra*. It is likewise immaterial that the constitution and the legislature set up and expressly recognize the Board

of Regents and that they have not done so in the case of the corporation. Sec. 36.03, Stats., gives to the regents "all the powers necessary or convenient to accomplish the objects and perform the duties prescribed by law." The regents have found it convenient to handle the acquisition of property for university purposes by a corporate agency and have created the agency for that purpose. All the property in question was acquired at the direction of the regents, and if they found it necessary or convenient to do so through the machinery of their creature-corporation, such method has not prevented the property from being the property of the state.

The learned trial judge dealt with that question as well as others and so completely determined the issues that we adopt his conclusions. Judge KOPP said in his memorandum opinion:

"There seems to be no difference of opinion between the university authorities and those of the city of Madison as to the tax-exempt status of this property if and when title finally rests in the name of the University of Wisconsin or the regents. The main difference of opinion seems to be over its taxable status while in the name of the relator and before it is actually devoted to unquestionable university work.

"Certain other facts should be mentioned which reasonably appear from the return, that are important:

"1. That the relator was incorporated as a convenient means of assisting the university or state in acquiring property for the exclusive use of the university.

"2. That the relator is officered and manned by officers and others connected with the university and the Board of Regents, the managers of the university.

"3. That there is no private interest connected with the relator and all its dealings and transactions with the public are for the university, its sole and exclusive beneficiary.

"4. That the relator acquires or disposes of property only as dictated by the Board of Regents of the university.

"5. That in the situation under consideration it is purchasing the property and holding it for the university as against the time when new university buildings can be erected thereon.

"6. That instead of removing the tenants in the meantime and allowing the property to remain idle some income by way of rentals is derived therefrom which, after paying necessary expenses, is turned over to the state treasurer.

"7. That all property that is now available and fit is, in the meantime, being actually used for university purposes.

"The principal question to be decided is whether real estate purchased at the direction of and for the Regents of the University of Wisconsin by this nonstock, nonprofit corporation, organized at the direction of the regents and authorized to acquire real estate for the exclusive use, purposes, and benefit of the University of Wisconsin and whose articles provide that its entire net income is to be turned over to the said regents, is exempt from taxation under sec. 70.11 (1) of the Wisconsin statutes.

"The material portion of said sec. 70.11 (1), 1949 statutes reads:

" '70.11. *Property exempted from taxation.* The property described in this section is exempted from general property taxes:

" '(1) *Property of the state.* Property owned by this state except land contracted to be sold by the state. This exemption shall not apply to land conveyed after September, 1933, to this state or for its benefit while the grantor or others for his benefit are permitted to occupy the land or part thereof in consideration for the conveyance.'

". . . There is no question but that the title to the real estate is in the name of the corporation. It is just as clear that it is held for the benefit of the university (the state) and that the beneficial owner is the state of Wisconsin. It seems to be the law that the court will always look for and

make a determination as to who is the real beneficial owner of the property. In the early case of *Ross v. Board of Supervisors,* 12 Wis. *26, the legal title to certain property was still in the United States although others were interested therein and it was claimed that it was not assessable. An action was brought to set aside a tax certificate after non-payment of taxes on the ground that the title was in the United States and, hence, that the land could not be taxed. The court held that, notwithstanding the fact that the title was still in the United States, the plaintiff had such an interest in the land as to make it subject to taxation. In *Comstock v. Boyle,* 144 Wis. 180, title to certain land was in the state in trust for certain individuals. It was held that the individuals were the beneficiaries and hence owners and that the property was taxable. . . . From these cases it would appear that taxation or exemption depends not upon the legal title but on the status of the owner of the beneficial interest in the property. In other words, the court always looks to the substance and not to the form. It appears from the articles of organization of the corporation that the only authority that it has is to 'buy, sell, lease, and otherwise acquire and convey real estate . . . for the exclusive uses, purposes, and benefit of the University of Wisconsin and to make improvements thereon and to exercise the powers necessary or convenient to accomplish said purposes.' It will thus be seen that it has no power to privately acquire lands, or to acquire them for any other use than for 'the exclusive uses, purposes, and benefit of the University of Wisconsin.' The articles further provide that the entire net income from this land 'shall be turned over to the Regents of the University of Wisconsin for the purposes of the ultimate acquisition of said property by the regents.' The court has many times held that in determining ownership of property it will look to substance rather than to form. . . . *Ford Hydro-Electric Co. v. Aurora,* 206 Wis. 489.

". . . In view of the fact that by the terms of its fundamental charter relator can only purchase and hold property 'for the exclusive uses, purposes, and benefit of the University of Wisconsin,' it would seem clear that the only interest held by the corporation is held for and in behalf of the real owner, the state of Wisconsin. All the *Aberg v. Moe Case* holds is that the legal title is in the grantee. Everything which the corporation holds it holds for the benefit of the state and, hence, belongs to the state the same as in *Ford Hydro-Electric Co. v. Aurora, supra.* Certain cases are cited as holding otherwise but they are cases where the statute provides not only that the property must be owned but must be used exclusively by the one claiming exemption. The statute in these cases is different than sec. 70.11 (1) covering instant case. See *Aberg v. Moe, supra,* p. 357; *Armory Realty Co. v. Olsen,* 210 Wis. 281. Here the statute, sec. 70.11 (1), exempts property 'owned exclusively by . . . the state except land contracted to be sold' etc. In other words, if the state owns it it is exempt. The ownership referred to must include or must mean beneficial ownership, not merely technical legal title with beneficial use in some other person. *Comstock v. Boyle, supra.* No one but the university or Board of Regents has any beneficial interest of any kind or description in these lots. The lots themselves and the income therefrom belong to the university or the Board of Regents. It is true that the taxing authorities found the legal title in the building corporation but an examination of the proper records would have revealed that all property held by this particular corporation belonged to the university and that it had no power or authority to hold title to any property for its own use or for any other person except the university. In *Loomis v. Callahan,* 196 Wis. 518, 529, the court said:

" 'The title to the land rests in the state and in the building corporation. The buildings are constructed upon property owned by the state. . . . They are used to carry on the func-

tions of the state university. The state contemplates the ultimate exclusive ownership of the property.'

". . . This same reasoning would lead to the same conclusion in the case at bar where the naked legal title is in the corporation but held exclusively for the benefit of the university."

*By the Court.*—Judgment affirmed.