WM. J. KENNEDY & SON, INC., Respondent, v. TOWN OF ALBANY, Appellant.

*No. 346. Argued January 3, 1975.—Decided February 4, 1975.*
(Also reported in 225 N. W. 2d 624.)

For the appellant there was a brief by *Walter H. Erbach* and *Voss, Nesson & Koberstein, S. C.*, all of Madison, and oral argument by *Mr. Erbach*.

For the respondent there was a brief by *James R. Cripe* and *Nowlan, Mouat, Lovejoy, Wood & Cripe*, all of Janesville, and oral argument by *James R. Cripe*.

HEFFERNAN, J. This appeal requires the determination of whether the town of Albany was the proper tax district for the assessment of property taxes on a movable bituminous plant which was physically present in the town during most of the tax year of 1970. We conclude that the trial judge correctly held that the personal property had no fixed location in the town and was not customarily kept there, and that the assessment could only be made by the district where the owner of the property resided.

The bituminous plant is used to manufacture a product used in road construction. Accordingly, its use is primarily confined to that time of the year when the temperature permits the laying of bituminous roadways or other bituminous construction. The record, which came to the trial court by writ of certiorari from the town of Albany's board of review, reveals that the plant was moved by its owners to wherever it was needed for construction. The trial court so found, and that finding is sustained by the evidence.

The record shows that, from the period August, 1967, to August 23, 1972, the bituminous plant was moved to, and operated in, at least six different areas of the state of Wisconsin, and on one occasion was operated at Rock Island, Illinois. It was physically present in the town of Albany from October, 1969, to June, 1970. It was returned to the town of Albany in July of 1970 because it was needed in the course of bituminous construction there and remained at that location until the time of the hearing. The parties agreed that the property was not in transit on the assessment date, May 1, 1970.

At the hearing on the writ of certiorari, the town contended that the bituminous plant should be assessed there, because the personal property was "located" in that assessment district. The trial judge, agreeing with the arguments of the property owner, found that the bituminous plant was not located in the town of Albany and it was not customarily kept there; that, rather, it was personal property which had no fixed or customary location, and, therefore, the assessment must be made by the tax district where the owner of the property resided. The owner, Wm. J. Kennedy & Son, Inc., had its residence for the purpose of this statute in the town of Beloit in Rock county, Wisconsin.

The place where personal property is to be assessed is governed by sec. 70.13 (1), Stats.[1]

This court in *F. F. Mengel v. North Fond du Lac* (1964), 25 Wis. 2d 611, 614, 131 N. W. 2d 283, stated

---

[1] Sec. 70.13 (1), Stats., provides:

"70.13 **Where personal property assessed.** (1) All personal property shall be assessed in the assessment district where the same is located or customarily kept except as otherwise specifically provided. Personal property in transit within the state on the first day of May shall be assessed in the district in which the same is intended to be kept or located, and personal property having no fixed location shall be assessed in the district where the owner or the person in charge or possession thereof resides, except as provided in subsection (5) of this section."

that sec. 70.13, Stats., recognizes four categories of personal property to determine in which district the property shall be assessed:

"Property having a fixed location is taxed in the district of that location. Property having no fixed location but customarily kept in one location is taxed where it is customarily kept. Property in transit on the assessment date and which necessarily is not located or customarily kept any place is taxed where it is intended to be kept or located. Finally, personal property which has no fixed location and not customarily kept for use in one location is taxed in the district where its owner or the person in charge of or in possession thereof resides."

Ordinarily, in seeking to uphold a decision of a trial court, we need not determine whether there was sufficient evidence to support a finding that was not made, but merely to determine whether the evidence was sufficient to sustain the finding that was made. In this instance, however, the category to which the trial judge assigned the property in question was the fourth, the catch-all category under which an assessment is to be made when it cannot be determined that the assessment falls within any of the other three categories. That determination is made by the process of elimination of the first three categories; and, accordingly, we must address ourselves on this review to the correctness of the trial judge's conclusion that the tax should not be assessed under any of the first three categories. We conclude that the evidence sustains this finding, that the property was not located in the town of Albany, and that it was not customarily kept there. That it was not in transit on the assessment date is conceded.

In *North Fond du Lac, supra,* page 615, we defined "is located":

"The term 'is located' in sec. 70.13 (1), Stats., means having a fixed location as that term is used in the same

subsection; not fixed, however, in the sense of absolute permanency but having a meaning of more permanency than temporarily and also greater than customarily kept."

According to the teaching of *North Fond du Lac,* therefore, since the test for "is located" requires even greater permanency than "customarily kept," the determination that the bituminous plant was not "customarily kept" in the town of Albany disposes of both contentions that would confer the taxing situs upon the town of Albany.

Under facts very similar to those in the instant case, this court dealt with the problem of whether road machinery was "customarily kept" in the village of Middleton, Wisconsin. *Middleton v. Lathers* (1933), 213 Wis. 117, 250 N. W. 755. The evidence in that case showed that, for three consecutive winters, Lathers brought his snow-removal equipment to Middleton because he had contracts for snow removal there. Lathers not only used his equipment for snowplowing in and around Middleton but also had repair work done at a garage there. Each spring after the equipment was moved out of Middleton at the end of the snowplowing season, it was removed to other job construction sites throughout the state. This court held that, even though the equipment was returned each year to Middleton during the winter season, it was not "customarily kept" there in the sense contemplated by sec. 70.13, Stats. Its location at Middleton was governed by circumstances such as convenience, the use of the equipment for winter work, and the cost of repairs.

In the instant case, as in *Middleton,* the physical presence of the property depended upon the location where the work was to be performed. In the instant case, the bituminous plant was brought to Albany only for the reason that a job existed there at the time. In view of the fact that in *Middleton* there were other factors than mere

job location that caused the sending of the equipment to Middleton, the argument that the property was "customarily kept" in Middleton was much stronger than that same argument applied to the facts here. The evidence was clear and uncontradicted that the only reason the property was present in the town of Albany was that there was work to be done there, and that the bituminous plant remained at that location until it was needed elsewhere.

The distinction between property that is "customarily kept" in an assessment district and the instant situation is exemplified by the facts of *Wisconsin Transportation Co. v. Williams Bay* (1932), 207 Wis. 265, 240 N. W. 136. In that case, boats used for transportation of passengers, mail, and freight on Lake Geneva during the summer were each fall returned to the village of Williams Bay for the purpose of avoiding ice hazards elsewhere on the lake and for the purpose of repair and reconditioning. Although during the boating season the fleet of boats customarily operated out of the city of Lake Geneva, this court held that the boats were taxable not by the city of Lake Geneva but by Williams Bay, because the boats were "customarily kept" there. The court defined the term, "customarily kept," in the course of the following discussion:

"While substantially all personal property is capable of being moved from one place to another, probably the greater portion thereof within this state has a location which may be considered fixed. There is also a rather large class of personal property which has no fixed location but which is ordinarily brought back to some certain place where it is stored or maintained when not in use. As to such property the important question to determine is, Where is it customarily kept? As to the property which is taxed where customarily kept, it seems clear that the legislature had in mind a large amount of personal property within this state which has no fixed location, which is moved about from place to place for much of the time but which is brought back at some regular interval or intervals to a given place where it

reposes for a time in a state of rest, repose, or non-use."
*Williams Bay, supra,* p. 269.

In the instant case the bituminous plant was not returned to the town of Albany "in a state of rest, repose, or non-use." The plant was brought to the town of Albany only when there was a job to perform there.

The record at the board of review, which was relied upon by the trial judge, contains sufficient evidence to support the trial court's finding that the property was neither "located" in the town of Albany nor "customarily kept" there. In accordance with the statute, the trial judge correctly concluded that this was personal property that may be assessed only in the district where the owner resided.

The appellant herein relies upon the 1961 case of *Cady v. Alexander Construction Co.* (1961), 12 Wis. 2d 236, 107 N. W. 2d 267, 108 N. W. 2d 145. Therein, on rehearing, this court stated that the property in question was present in the town of Cady for a sufficient time to be located there within the meaning of sec. 70.13, Stats. The question in that case, however, is a very different one than that under consideration here. The principal argument of the Alexander Construction Company was that the state of Wisconsin did not have jurisdiction to tax the personal property of a Minnesota resident. Our court properly approached this problem as a constitutional question involving the conflict of laws between the tax power of Minnesota and the power of the state of Wisconsin to tax property owned by a nonresident but physically located in the territorial confines of Wisconsin. In *Cady,* once it was concluded that Wisconsin had the jurisdiction to tax the property, the town of Cady was the only tax district in the state of Wisconsin that could assert the right to make an assessment. The competing claim of another Wisconsin tax assessment district which is contemplated in sec. 70.13, Stats., and which is present in the instant case, was totally absent in the *Cady Case.*

The holding in *Cady* is not germane to the issue before the court in the instant case.

The distinction between the *Williams Bay Case* and the *Middleton Case,* on one hand, and the *Cady Case,* on the other, is pointed out in *Cady* itself. Both *Williams Bay* and *Middleton* dealt not with the jurisdiction to tax but with the proper assessment district.

Inasmuch as the town of Albany, under the facts, was not the tax district required by the statute, the assessment was invalid. Under this circumstance, the question of whether the assessment was excessive is irrelevant. It is of no effect.

*By the Court.*—Judgment affirmed.